UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

_____

**MATT STROUD; POSTINDUSTRIAL,**

　　　*Plaintiffs*,

**v.**

**MAGISTERIAL DISTRICT JUDGES DANIEL E. BUTLER, ANTHONY M. CEOFFE, KEVIN E. COOPER, JAMES J. HANLEY, JR., RICHARD G. KING, RANDY C. MARTINI, JAMES A. MOTZNIK, MIKHAIL N. PAPPAS, OSCAR J. PETITE, JR., ROBERT P. RAVENSTAHL, EUGENE N. RICCIARDI, DERWIN D. RUSHING,** in their official capacities; **PRESIDENT JUDGE KIM BERKELEY CLARK,** in her official capacity; and **SHERIFF WILLIAM P. MULLEN,** in his official capacity,

　　　*Defendants*.

**COMPLAINT**

Civil Action No. _2:19-cv-1289___

_____

## I.　　INTRODUCTION

1.　　Each week, magisterial district judges in Pennsylvania's Fifth Judicial District set bail for dozens of recently arrested individuals in hearings held in the Pittsburgh Municipal Court. The stakes of these hearings are extremely high. A judge's decision on bail determines whether an arrestee will spend the ensuing days, weeks, or

1

months awaiting trial at home with family or alone in a jail cell.  That decision can have profound consequences for the arrestee: for many, it dictates whether or not they will be able to keep their jobs, support their families, avoid eviction, or obtain favorable resolutions to their cases.

2.      Given the significance of bail determinations, it is unsurprising that the bail process has become a focal point in local and national debates about our criminal justice system.  Growing public concern about the fairness of cash-bail systems has spurred important reform efforts across the country.  In Pittsburgh, these efforts have been the subject of widespread media coverage and intense public discourse, including during the City's most recent primary election for District Attorney.

3.      Yet, despite the immense public interest in Pittsburgh's bail system, the public's ability to ascertain what happens during bail hearings remains severely constrained.  All bail hearings occur entirely off the record: no court reporter is present, no transcripts are made, and no portion of the proceedings is recorded.  Moreover, the court provides no advance notice of when any hearing will begin, which magistrate will preside, or what information or court filings the magistrate receives prior to the hearing. As a result, numerous objective facts about the bail hearings remain hidden from public view.

4.      Pennsylvania court rules exacerbate these barriers to transparency.  In particular, the rules make it impossible for people to document—in a thorough, accurate, and consistent way—what happens at bail hearings.  Although members of

2

the public can attend the hearings, the rules prohibit them from making any "stenographic, mechanical, [or] electronic recording" of the proceedings—even with silent, non-cellular audio recorders. These restrictions further stifle the public discourse surrounding Pittsburgh's bail system by ensuring that only a handful of people can ever obtain a truly unfiltered view of exactly how bail hearings work.

5.     This suit challenges those restrictions. Plaintiffs seek to report on and engage in public debate surrounding Pittsburgh's evolving bail system. Matt Stroud is a journalist who reports on bail practices in Allegheny County, and *Postindustrial* is an online and print magazine that covers, among other topics, Pittsburgh's criminal justice system. Plaintiffs want to use audio recordings of bail hearings to give the public a complete, accurate, and objective view of what happens during these life-altering proceedings. Specifically, they would use the recordings to capture and reveal aspects of the hearings that written summaries alone cannot capture, including the participants' exact words, voices, and inflections, all of which are currently excluded from the public discourse. By incorporating these recordings directly into their reporting, Plaintiffs would expose—in the most objective light possible—the realities of the bail process for those in the courtroom and the community whose lives are profoundly affected by these hearings.

6.     The challenged rules prohibit Plaintiffs from doing exactly that—despite the fact that Plaintiffs' actions pose no threat to the orderly function of the Fifth Judicial District's bail hearings. Plaintiffs therefore seek a declaratory judgment holding that

3

the court's rules constitute an unwarranted abridgment of their speech and reporting activities in violation of the First Amendment.

## II.    PARTIES

7.    Plaintiff **Matt Stroud** is the CEO and Executive Editor of Postindustrial Media, as well as a journalist who writes for *Postindustrial*. Prior to founding *Postindustrial*, Mr. Stroud worked as a freelance journalist and staff reporter at multiple publications, including as a national reporter at Bloomberg News and a correspondent for the Associated Press. Mr. Stroud's writing focuses on, among other topics, criminal justice issues in Pennsylvania, including bail practices in Allegheny County. In December 2018, he wrote "Bailed Out!", which reported on the bail set in 114 homicide cases in Allegheny County. In February, he began reporting a follow-up story addressing how bail amounts differ between Allegheny County judges.

8.    Plaintiff ***Postindustrial*** is an online and print magazine that provides in-depth reporting about communities in the Rust Belt and Greater Appalachia, including Pittsburgh. *Postindustrial* publishes stories on a variety of topics, including bail and other criminal justice issues. Part of its mission is to report on how the criminal justice system interacts with the poor and at-risk communities. In addition to publishing full-length articles, *Postindustrial* distributes "The Pittsburgh Record," a daily newsletter and podcast about Pittsburgh news, and it also distributes the podcast "Criminal Injustice," a series that "dissects problems with police, prosecutors and courts."

9.     Defendant **Kim Berkeley Clark** is the President Judge of the Fifth Judicial District.  Pursuant to Pennsylvania Rule of Criminal Procedure 116, President Judge Clark is responsible for ensuring that Magisterial District Judges comply with the Pennsylvania Rules of Criminal Procedure, including the prohibition against audio recording.

10.     Defendants **Daniel E. Butler**, **Anthony M. Ceoffe**, **Kevin E. Cooper**, **James J. Hanley, Jr.**, **Richard G. King**, **Randy C. Martini**, **James A. Motznik**, **Mikhail N. Pappas**, **Oscar J. Petite, Jr**., **Robert P. Ravenstahl**, **Eugene N. Ricciardi**, and **Derwin D. Rushing** are Magisterial District Judges who preside over bail hearings in the Pittsburgh Municipal Court during the daytime.[1]  During the time that each Magisterial District Judge is on the bench, he or she is responsible for prohibiting members of the public from making recordings of bail hearings.  The magistrates have authority to direct Sheriff's deputies, who provide courtroom security, to enforce the prohibition on recordings by seizing recording devices and/or removing a person making a recording from the courtroom.  Each Magisterial District Judge also possesses authority to hold anyone who violates the ban in contempt.

11.     Defendant **William P. Mullen** is the Sheriff of Allegheny County and leads the Allegheny County Sheriff's Office.  The Sheriff is responsible for security at

---

[1]  Magisterial District Judges preside over bail hearings in three shifts:  a daytime shift, an evening shift, and an overnight shift.  Defendants here preside over the daytime shift, though there is no fixed schedule dictating which days each Judge will preside. Other Magisterial District Judges preside over the evening and overnight shifts.

the Municipal Court and for enforcing court rules, including the prohibitions on audio recording, and a separate criminal statute that also bars audio recording. A Fifth Judicial District administrative order prohibiting audio recording designates the Sheriff "as responsible for enforcement of this policy." Sheriff Mullen has established a policy and practice requiring his office to enforce the prohibition on audio-recording embodied in court rules and the administrative order: A policy memorandum specifically addressing the Sheriff's role in enforcing the Fifth Judicial District's ban on cell phones states, "It is the policy of the Allegheny County Sheriff's Office to enforce Orders of Court issued by the Court of Common Pleas of Allegheny County."

## III.   JURISDICTION & VENUE

12.   Plaintiffs bring this action under 42 U.S.C. § 1983 and the First Amendment. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

13.   Venue is proper in this District under 28 U.S.C. § 1391.

## IV.   FACTS

### A.   Public Discourse Surrounding Pittsburgh's Bail System

14.   In recent years, concern over the use of "cash bail" has emerged as a major criminal justice issue. A growing number of lawmakers, researchers, and citizens have come to believe that the widespread use of monetary bail as the primary means of securing pretrial release has had devastating effects on indigent arrestees, their families, and their communities. These concerns have sparked political debates, litigation, and policy changes in states and cities around the country.

15.    Pittsburgh is no exception to this trend.    The *Pittsburgh Post-Gazette* described "the use of cash bail to hold defendants prior to trial" as one of three "issues at the core" of the 2019 Democratic primary for Allegheny County District Attorney.[2] The contested primary was the first in twenty years and, the day before the vote, the eventual winner, District Attorney Stephen A. Zappala, Jr., touted his approach to bail in an op-ed.[3]

16.    Other political figures have weighed in, too.    For example, Judge Mikhail Pappas campaigned on the promise of changing the way the court system interacts with impoverished people, and he has sought to draw attention to his minimal use of cash bail since being elected.    At the same time, Sheriff Mullen has spoken out to criticize changes to the ways bail is used.

17.    The issue has captured public attention outside the political arena, as well. In 2018, the Heinz Endowments announced that it would dedicate part of a recent $10 million investment in local criminal-justice programming to bail reform.    The University of Pittsburgh Institute of Politics has published reports recommending changes to bail practices in Allegheny County in the past four years.    The RAND Corporation is currently conducting a long-term study of bail hearings in Pittsburgh Municipal Court,

---

[2]  Paula Reed Ward, *Zappala Retains Seat as District Attorney*, PITTSBURGH POST-GAZETTE, May 21, 2019, https://perma.cc/5PNA-ADCU.

[3]  *See* Stephen A. Zappala, Jr., *Serving Justice by Always Changing*, PITTSBURGH POST-GAZETTE, May 20, 2019, https://perma.cc/SC9U-T4D4  ("I am proud that we have reduced the financial burden of the criminal justice system on the poor by working for more than a decade to eliminate cash bail.").

with a focus on the value of counsel.  And numerous newspaper articles have covered the use of bail in Pittsburgh and throughout Pennsylvania.

**B.    The Bail Process in Pittsburgh**

18.    Magisterial District Judges set bail twenty-four hours a day, seven days a week, in a courtroom on the first floor of the Pittsburgh Municipal Courthouse. Defendant Magisterial District Judges preside over all bail decisions during normal business hours, taking rotating shifts.  These hearings, sometimes referred to as "preliminary arraignments," are open to the public to observe.

19.    The bail-setting process begins shortly after arrest.  A representative of the Pretrial Services Department interviews the arrested individual to compile information about his or her criminal history, employment and family obligations, ties to the community, and other relevant information.  The Pretrial Services Department then uses this information to create a risk assessment, which includes recommended conditions of release.  There are three potential recommendations: release on recognizance; release with non-monetary conditions, such as requirements to report to a representative of the Pretrial Services Department or an order of no contact with an alleged victim; or no release because the individual has been determined to be a danger to the community or a high risk of failing to appear at the next court date.  The Pretrial Services Department does not recommend money bail as a condition of release.

20.    After completing the recommendation, Pretrial Services provides a report to the presiding Judge and the Public Defender's Office.  An assistant public defender

then has an opportunity to meet with the arrested individual in the jail to conduct an interview.

21.    Following that meeting, the assistant public defender appears in front of the presiding judge to advocate for appropriate conditions of release, sometimes defending the Pretrial Service Department's recommendation and sometimes arguing against it.  The assistant Public Defender may present additional evidence not collected by Pretrial Services during this argument.  This argument happens in open court, though the arrested individual is not present.

22.    After hearing argument and asking any necessary questions, the presiding Judge decides what conditions of release to impose.  Although Pretrial Services does not recommend the use of cash bail as a condition of release, Magisterial District Judges frequently impose it.

23.    Because the arrestee is not present at the hearing held to determine conditions of release, a second hearing is held to announce the decision.  The assistant public defender travels back to the jail to be present with the arrested individual for the Judge's announcement of his or her decision.  At that time, the arrestee (along with the assistant public defender) is connected with the Judge via video link.

24.    The Judge then announces the charges against the individual, announces when the preliminary hearing will be held, and announces the conditions of release, including any cash bail, imposed or the denial of release altogether.

25.    The decision on bail carries major ramifications for arrestees and their families.  For the arrestees—the vast majority of whom are indigent—the imposition of secured cash bail as a condition of release typically means facing pretrial detention, which, in turn, can lead to job loss, eviction, separation from children, and other adverse consequences.  Moreover, several studies—including one focused on Pittsburgh—have shown that people detained before trial consistently experience worse outcomes in their cases, even when controlling for other potential causes.[4]

### C.    The Public's Limited Access to Bail Proceedings

26.    Bail hearings in the Pittsburgh Municipal Court are generally open to the public.  However, almost no information is made available to the public in advance of the hearings.  No list of arrestees scheduled for bail hearings is made available to the public.  The Pretrial Services Division's report is not made available to the public.

27.    At the bail hearings, no court reporter is present.  No transcript is made.  No audio recording is made.  And neither the representative for the District Attorney's Office nor the arrestee's representative provides any written argument.

28.    No one within the Fifth Judicial District—including President Judge Clark, the Magisterial District Judges, and Sheriff Mullen—makes any audio, video, or written recordings of the bail proceedings available to the public.  As a result, there is

---

[4]  *See, e.g.*, Arpit Gupta, Christopher Hansman, and Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* (Aug. 18, 2016), https://perma.cc/S9QS-7Y7Q  (examining the use of cash bail in Pittsburgh and Philadelphia).

no record of the portion of the hearing during which the assistant Public Defender advocates for certain conditions of release. Nor is there any record of the portion of the hearing at which the Judge announces his or her decision to the arrestee.

### D.    Court Rules Prohibiting Recording During Bail Hearings

29.    Three separate court rules prohibit the public from making audio recordings of bail proceedings: Pennsylvania Rule of Criminal Procedure 112, Pennsylvania Rule of Judicial Administration 1910, and Allegheny County Rule of Criminal Procedure 112.1.

30.    ***Pennsylvania Rule of Criminal Procedure 112.*** Rule 112 provides, in relevant part:

> (C)  Except as provided in paragraph (D), the stenographic, mechanical, electronic recording, or the recording using any advanced communication technology, of any judicial proceedings by anyone other than the official court stenographer in a court case, for any purpose, is prohibited.

> (D)   In a judicial proceeding before an issuing authority, the issuing authority, the attorney for the Commonwealth, the affiant, or the defendant may cause a recording to be made of the judicial proceeding as an aid to the preparation of the written record for subsequent use in a case, but such recordings shall not be publicly played or disseminated in any manner unless in a court during a trial or hearing.

Thus, for members of the public, such as Plaintiffs, Rule 112(C) operates as a complete ban on making audio recordings of criminal hearings, including bail hearings.

31.    ***Pennsylvania Rule of Judicial Administration 1910.*** Rule 1910 provides, in relevant part, that "judges should prohibit broadcasting, televising,

recording or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions," subject to limited exceptions that do not apply to Plaintiffs.  Rule 1910 operates to bar members of the public—such as Plaintiffs—from making audio recordings of bail proceedings.

32.    ***Allegheny County Rule of Criminal Procedure 112.1.*** Local Rule 112.1 provides, in relevant part:

> (a) Except as provided for in Pa.R.Crim.P. 542(C)(5), the broadcasting, televising, recording of proceedings, or the taking of photographs, is prohibited in all courtrooms in the Pittsburgh Municipal Court.
>
> . . .
>
> (c) If any electronic device is enabled or in any way disrupts court proceedings, the Sheriff is authorized to confiscate the device until the conclusion of the proceedings and/or to remove the person in possession of the device from the courtroom.

Pennsylvania Rule of Criminal Procedure 542(C)(5) creates a limited exception that allows for the defendant in a preliminary hearing to make a recording.  Therefore, Local Rule 112.1 likewise operates to bar members of the public, including Plaintiffs, from making audio recordings of bail proceedings.

33.    The President Judge, Magisterial District Judges, and Sheriff enforce these rules in a number of ways.

34.    Deputy sheriffs, pursuant to Sheriff Mullen's policy, monitor the courtroom to ensure that no one is making recordings.

35.     President Judge Clark denies permission to record bail hearings when asked.

36.     The Magisterial District Judges have signs in the courtroom that expressly prohibit the use of cell phones, which are capable of making recordings.

37.     Finally, the Magisterial District Judges instruct anyone using a device capable of recording—even if the device, such as a cell phone, is not actually being used to record—to stop using the device in the courtroom. Those instructions are backed by the Magistrates' contempt power and ability to direct deputy sheriffs.

38.     There is no valid justification for the ban on audio recording.

39.     The ban does not preserve confidentiality because the proceedings are open to the public to observe in-person.

40.     The ban does not minimize disruption to ongoing proceedings because audio recordings can be made silently and inconspicuously, and because the existing ban explicitly allows defendants to make such recordings.

41.     The ban does not protect against witness intimidation because there are no witnesses at bail hearings.

42.     Several jurisdictions have made their own audio recordings of bail hearings available to the public for years.

**E.     Plaintiffs' Requests for Permission to Audio Record Bail Hearings**

43.     On May 29, 2019, Mr. Stroud requested that President Judge Clark allow him to record bail proceedings in the Pittsburgh Municipal Court in connection with

his reporting on bail practices in Allegheny County.  The same day, the Deputy Court Administrator replied on behalf of President Judge Clark that Mr. Stroud could not record because "recording proceedings is strictly prohibited by Pa.R.Crim.P. 112 and Allegheny County Local Rules."

### F.    Injuries to Plaintiffs

44.    As noted above, the Fifth Judicial District does not create a public record of what transpires during bail hearings—there is no court reporter present and no recordings of the hearings are made.  In the absence of any such official record of the proceedings, the only way for Plaintiffs to accurately memorialize what happens during those proceedings is to attempt to create their own record of the proceedings.  But the challenged court rules preclude Plaintiffs from doing exactly that.  Thus, the rules stifle Plaintiffs' ability to document, report, and comment—fully and accurately—on Pittsburgh's bail process and infringe their rights to engage in protected First Amendment activity.

45.    Moreover, the audio recording ban curtails the public's access to complete, accurate, and objective information about their criminal justice system: after all, most people cannot observe court proceedings on a regular basis and, instead, must rely on the work of journalists, activists, and community leaders—like Plaintiffs—to learn what happens during those proceedings.  By prohibiting all efforts to audio record bail hearings, the challenged rules deprive the public of a vital source of unfiltered information about both the bail system and the officials who administer it.  In short,

14

the challenged rules do not simply operate to suppress Plaintiffs' individual efforts to contribute to meaningful civic discourse about Pittsburgh's bail system; they also limit the stock of information from which the public may draw in evaluating that system.

46.     Plaintiffs also have reason to fear that the President Judge, Magisterial District Judges, and Sheriff may invoke the challenged rules to prohibit them from taking handwritten notes during bail proceedings.  Rule of Criminal Procedure 112 expressly prohibits "stenographic" forms of recording and court representatives have previously prevented Mr. Stroud from taking handwritten notes during proceedings held in open court.  Preventing people from taking handwritten notes during bail hearings would, when combined with the prohibition against audio recording, constitute a complete ban on the public's ability to document and report on what happens during those proceedings.

47.     Plaintiff Matt Stroud has written multiple articles on the use of cash bail in Allegheny County and plans to write more.

48.     It is Mr. Stroud's regular practice to conduct follow-up investigations after he publishes a story so that he may report on any changes—or refusals to change— made in the aftermath of his reporting.  For example, Mr. Stroud published a book, *The Thin Blue Line: The Failure of High Tech Policing*, in 2019 that grew out of a single article he wrote for *The Verge*, a technology website.

49.     Following this regular practice, Mr. Stroud continues to monitor the use of bail in Pittsburgh.  He intends to incorporate the new information he gathers into

15

his future work, including any updates to the online version of the piece on how bail amounts differ between Allegheny County judges.  Mr. Stroud's writing plays an important role in ensuring that the public is informed about how cash bail is used in Pittsburgh and whether various actors—such as District Attorney Zappala and Judge Pappas—are following through on public statements about their approaches to bail reform

50.    The challenged rules curtail Plaintiffs' ability to engage in these protected First Amendment activities.  Even setting aside Rule 112's formal prohibition on "stenographic" recording, the rapid pace of bail hearings makes it impossible to take comprehensive verbatim notes, let alone to take notes on the participants' tones of voice or inflections.  Because no information is provided to the public in advance of each bail hearing, observers must try in vain to handwrite key facts from every hearing—names, charges, arrestee backgrounds, and other details—while, at the same time, trying to process the arguments being presented and the decisions being rendered. Plaintiffs know from experience that it is not possible to capture every detail from every bail hearing through handwritten notes alone.  Prohibiting Plaintiffs from audio recording the hearings therefore deprives them of a full, accurate, and objective record of the hearings that they observe.  What's more, the prohibition deprives the broader public of access to that comprehensive record by ensuring that nobody can include a truly complete account of the hearings in news coverage of the proceedings.

51.     The rules further infringe Plaintiffs' protected newsgathering and reporting activities.   For example, the rules prevent Plaintiffs from making more effective use of direct quotations, rather than forcing them to rely on paraphrasing. Moreover, the rules prevent Mr. Stroud from embedding audio clips into *Postindustrial*'s online coverage of the bail issue, including future stories and updates to previously published pieces.   Such clips would serve to highlight the human aspects of the hearings—such as tone of voice and pace of arguments—that cannot be captured as powerfully in writing.   In short, the ability to audio record bail hearings will not only enhance the effectiveness of Mr. Stroud's reporting, but also fundamentally change its substance.

52.     If not for the restrictions on audio recording, Mr. Stroud would begin attending bail hearings in the Pittsburgh Municipal Court during the day time and making audio recordings of those hearings right away.   He would use a silent, handheld recording device that would cause no disruption to courtroom hearings, and he would even allow courthouse security to inspect the device before he began using it.   The recording device would not have any cellular or wireless capabilities.

53.     Plaintiff *Postindustrial* regularly publishes stories about criminal justice reform and bail issues.   Publishing these stories is part of *Postindustrial*'s mission of reporting on criminal justice issues that affect poor and marginalized communities. *Postindustrial* intends to publish additional stories about bail—including follow-up stories from Mr. Stroud—as part of pursuing this mission.   Between publishing 10-12

17

pieces per bi-monthly print issue, publishing additional stories online, and distributing a daily newsletter, *Postindustrial* has adequate capacity to carry out its plan to continue publishing stories on bail.

54.     The challenged rules prevent *Postindustrial* from engaging in protected expression and reporting activities—such as embedding audio clips into its online features—and, thus, fundamentally suppresses its ability to participate in and contribute to public discourse.  As described above, audio recordings capture elements of a story that written descriptions cannot and provide *Postindustrial*'s authors with a more comprehensive, detailed, and accurate investigatory record.  For this reason, *Postindustrial* encourages its authors to use audio recording devices, has invested in multiple podcasts, and is capable of embedding clips into any future online reports.

55.     If not for the unconstitutional prohibitions on audio recording, *Postindustrial* would work with Mr. Stroud to collect audio clips as he gathers information for future reporting, and *Postindustrial* would also work with Mr. Stroud to embed the audio clips directly into future stories or any updates to his piece on how bail amounts differ between Allegheny County judges.  Currently, however, the rules restrict the manner in which *Postindustrial* communicates with its audience and the wider public.

## V.   CAUSE OF ACTION

**Pennsylvania Rule of Criminal Procedure 112, Pennsylvania Rule of Judicial Administration 1910, and Allegheny County Rule of Criminal Procedure 112.1 Violate Plaintiffs' First Amendment Rights (All Plaintiffs against all Defendants)**

56.    The foregoing allegations are incorporated herein.

57.    "One of the demands of a democratic society is that the public should know what goes on in courts by being told by the press what happens there, to the end that the public may judge whether our system of criminal justice is fair and right." *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 920 (1950) (Frankfurter, J., respecting the denial of certiorari).  For that very reason, the First Amendment protects the public's right to observe criminal proceedings, as well as the right to document and report on what occurs during those proceedings.

58.    Pennsylvania Rule of Criminal Procedure 112, Pennsylvania Rule of Judicial Administration 1910, and Allegheny County Rule of Criminal Procedure 112.1 prohibit members of the public, including Plaintiffs, from making audio recordings of bail hearings.  There are no exceptions to Pennsylvania Rule of Criminal Procedure 112 for members of the public, like Plaintiffs.  Nor do Plaintiffs qualify for any of the exceptions to Rule of Judicial Administration 1910 or Allegheny County Rule of Criminal Procedure 112.1.

59.     If not for these unconstitutional rules, Plaintiffs would make audio recordings of bail hearings for use in future reports and communications with the public and governmental actors.

60.     Defendants enforce the challenged rules and will enforce them against Plaintiffs if Plaintiffs attempt to make audio recordings.  This violates Plaintiffs' First Amendment rights.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. Declare Pennsylvania Rule of Criminal Procedure 112 unconstitutional insofar as it is applied to prohibit Plaintiffs from audio recording bail hearings in the Pittsburgh Municipal Court;

B. Declare Pennsylvania Rule of Judicial Administration 1910 unconstitutional insofar as it is applied to prohibit Plaintiffs from audio recording bail hearings in the Pittsburgh Municipal Court;

C. Declare Allegheny County Rule of Criminal Procedure 112.1 unconstitutional insofar as it is applied to prohibit Plaintiffs from audio recording bail hearings in the Pittsburgh Municipal Court;

D. Award Plaintiffs attorneys' fees and costs incurred for litigating against Sheriff Mullen; and

E. Grant such further relief as may be just, lawful, and equitable.

Respectfully submitted,

  /s/  Charles Kelly

CHARLES KELLY  (PA 51942)
JOHN A. MARTY  (PA 324405)
SAUL EWING ARNSTEIN & LEHR LLP

ROBERT D. FRIEDMAN*
NICOLAS Y. RILEY**
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY & PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER

One PPG Place, Suite # 3010        600 New Jersey Avenue NW
Pittsburgh, PA 15222              Washington, DC 20001
Tel.:   412-209-2500               Tel.:   202-662-4048
Fax:   412-209-2570              Fax:   202-662-9248
charles.kelly@saul.com         rdf34@georgetown.edu
john.marty@saul.com           nr537@georgetown.edu

*Counsel for Plaintiffs*

Dated:  October 8, 2019

---

\*      Admitted to practice in the District of Columbia (DC 1046738) *pro hac vice* application forthcoming.

\*\*    Admitted to practice in New York (NY 5039607); *pro hac vice* application forthcoming.